IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TFORCE ENERGY SERVICES, INC. (f/k/a I. E. Miller Services, Inc. and Hemphill Trucking, Inc.), <br>    Plaintiff, <br><br> v. <br><br> ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, <br>    Defendant. | Civil Action No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, Plaintiff TForce Energy Services, Inc. (formerly known as I. E. Miller Services, Inc. and Hemphill Trucking, Inc.) and files this Original Complaint against Defendant Allianz Global Risks US Insurance Company ("Allianz"), and, in support of same asserts and would show the following:

**I.
PARTIES**

1. Plaintiff TForce Energy Services, Inc. ("Plaintiff") is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Canada.

2. Defendant Allianz is a corporation existing under the law of the State of Illinois with its principal place of business in the State of Illinois. Allianz can be served with summons through its appointed Texas registered agent for service FED.R.CIV. P. 4(h), by serving its registered agent for service, CT Corporation System, 1999 Bryan St., Suite 900, Dallas Texas 75201-3136.

## II.
## VENUE AND JURISDICTION

3.     There is complete diversity of citizenship among and between the parties to this civil action, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000).  As such, federal jurisdiction exists pursuant to 28 U.S.C. §1332.

4.     Venue is proper in this District under 28 U.S.C. 1391(b)(1) and 1391(c)(2) and (d) because Allianz as a corporation and is subject to personal jurisdiction in this District, and thus resides in this District.

## III.
## FACTS

**A.     THE UNDERLYING ACCIDENT AND LAWSUIT AT ISSUE**

5.     On March 16, 2012, I. E. Miller Services, Inc. ("I.E. Miller"), was performing services on a Linn Energy well rig site near Briscoe, Texas that involved moving the drilling rig through the use of a Hylab 138 Crawler Crane.

6.     During the process of the movement of the rig using the crane, the crane boom fell onto Mr. Todd Beason, the rig manager, resulting in Mr. Beason sustaining serious bodily injuries that eventually led to his left hand being amputated below the elbow (the "Accident").

7.     As a result of the Accident, Mr. Beason and his wife ("the Beason Plaintiffs") filed a lawsuit against I. E. Miller in Oklahoma County, Oklahoma, where the Beason Plaintiffs lived, seeking damages related to his injuries ("the Underlying Lawsuit").

B.  **PLAINTIFF'S INSURANCE PROGRAM**

8.  On the date of the Accident, I. E. Miller was a named insured on certain insurance policies that had been purchased and maintained by the TransForce corporate family of companies. Specifically, effective December 1, 2011 and due to the merger of TransForce Acquisition II. Corp. into I. E. Miller, I. E. Miller, a Texas corporation then headquartered in Houston, was added as a named insured under a National Union Fire Insurance Company primary general liability insurance policy no. GL 187-21-36 that afforded $10 Million per "occurrence" for accidents occurring during the policy period of December 1, 2011 through December 1, 2012 ("the AIG Primary Policy").  A true and correct copy of the AIG Primary Policy is attached hereto as **Exhibit A**. The endorsement adding I. E. Miller as a Named Insured is attached as **Exhibit A-1**.

9.  While the AIG Primary Policy covered damages assessed against the named insureds such as I. E. Miller up to its $10 Million per "occurrence" limits, it does not cover defense costs incurred in defending lawsuits, pre-judgment interest, post-judgment interest or other types of costs and fees associated with lawsuits and appeals.

10.  Specifically, the AIG Primary Policy contains a "Deductible Coverage Endorsement" stating "This Endorsement Changes the Policy" and providing that the insured must reimburse the insurer for "All 'Allocated Loss Adjustment Expense'." A true and correct copy of the AIG Primary Policy's "Deductible Endorsement" is attached hereto as **Exhibit A, page 000053.**

11.  "Allocated Loss Adjustment Expense" is defined in section III of the Endorsement and includes "all fees for service of process and court costs and court expenses; pre- and post-judgment interest; attorney's fees; . . . and any similar fee, cost or expense

reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or suit against you. . . ". (See **Exhibit A,** p. 000055).

12. Defendant Allianz also issued an Excess Liability policy no. XYZ-000-2417-7602 to TransForce Inc., the corporate parent of Plaintiff, as the first named insured for the policy period of December 1, 2011 through December 1, 2012 ("the Allianz Excess Policy"). A true and correct copy of the Allianz Excess Policy is attached hereto as **Exhibit B**.

13. Under the Allianz Excess Policy's Section I. Excess Liability, section D., titled "Coverage A Who Is An Insured" (**Exhibit B**, page 000026) the Allianz Excess Policy also covered as "insureds" those companies that are "insureds" under the various Primary Policies that were listed on its "Schedule of Primary Insurance."

14. The AIG Primary Policy insuring I. E. Miller is listed on the Allianz Excess Policy's "Schedule of Primary Insurance." (See **Exhibit B**, p. 000003). Allianz was specifically notified of the addition of I. E. Miller to policies in late November 2011 when I. E. Miller was added to the policies. Thus, I. E. Miller, a Texas corporation with headquarters in Houston at the time, was also an insured on the Allianz Excess Policy at the time of the Accident.

15. The Allianz Excess Policy affords $15 Million (Canadian) per "occurrence" and in the aggregate of excess liability coverage to I. E. Miller to the extent that its liability for damages exceeded the $10 Million (U.S.) limits of the AIG Primary Policy. (See **Exhibit B**, pp. 000001, 000022)

16. The Allianz Excess Policy also contains provisions that extend coverage for some things that are not covered on the underlying scheduled Primary Policies. Specifically, the Allianz Excess Policy's "Section III. Supplementary Payments," (See **Exhibit B**, p. 000036-37) states:

> With respect to any claim we investigate or settle, or **Suit** against any **Insured** we defend, we will pay in addition to the applicable Limits of Insurance:
>
> \* \* \* \* \* \*
>
> B. The following to the extent that they are not covered by **Primary Insurance** or **Other Insurance**:
>
> 1. Costs taxed against any Insured in the **Suit**;
>
> \* \* \* \* \* \*
>
> 3. The cost of bonds to release attachments, but only for bond amounts within our applicable Limit of Insurance. We do not have to furnish these bonds;
>
> \* \* \* \* \* \*
>
> 6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our applicable Limit of Insurance.

17. Thus, court costs, bonding costs, and post-judgement interest that accrue on judgments entered against an insured are covered on the Allianz Excess Policy to the extent that they are not covered on the underlying AIG Primary Policy.

18. Plaintiff herein, TForce Energy Services, Inc., is the successor in interest to I. E. Miller by way of a merger of TransForce Acquisition II Corp. into I. E. Miller, followed by a merger of I. E. Miller into Hemphill Trucking, Inc., followed by Hemphill Trucking, Inc. officially changing its corporate name to TForce Energy Services, Inc.

## C. THE TRIAL OF THE UNDERLYING LAWSUIT AND RESULTING JUDGMENT AND APPEAL

19. On November 10, 2014, Plaintiff placed Allianz on notice of the Underlying Lawsuit and advised that it had the potential to exceed the $10 Million limits of the AIG Primary Policy.

20. Thereafter, Allianz investigated the facts and circumstances involved, hired its own monitoring counsel to monitor the case as it proceeded towards trial, received access

to reports of defense counsel, participated in conferences with defense counsel, expressed its views on settlement, and was otherwise actively involved in the various decisions and strategy as the case moved forward.

21. Although efforts were made, attempts to settle the Underlying Lawsuit within the $10 Million primary limits of the AIG Primary Policy were unsuccessful. As a result, the Underlying Lawsuit went to trial in June 2015. On June 16, 2015, the jury awarded $15 Million in actual damages to the Beason Plaintiffs.

22. Applying certain damage caps on non-economic damages under an Oklahoma statute, i.e., 23 O.S. 2011, the trial court judge in the Underlying Lawsuit, over the objections of the Beason Plaintiffs' counsel that the statute was unconstitutional, reduced the damages to $9.7 Million and on July 10, 2015 entered final judgment against I. E. Miller, including statutory pre-judgment interest, in the amount of $9,703,592.86.

23. The Beason Plaintiffs appealed the reduction of the damages statute to the Oklahoma Supreme Court, asserting that the statute was unconstitutional under the Oklahoma Constitution. I. E. Miller filed a cross appeal on certain other evidentiary and trial issues.

24. On April 23, 2019, a majority of the Oklahoma Supreme Court, with four justices dissenting, issued its ruling and opinion in *Beason v. I. E. Miller Services, Inc.*, 441 P.2d 1107 (Okla. 2019) holding that 23 O.S. 2011's limits on awards of non-economic damages violated the Oklahoma Constitution and remanded the case to the trial court for entry of judgment in accordance with the jury verdict.

25. In accordance with the Oklahoma Supreme Court's remand, on June 21, the trial court in the Underlying Lawsuit entered its "Amended Journal Entry of Judgment",

**Exhibit C**, amending the July 10, 2015 judgment to award the Beason Plaintiffs the $15 Million in damages as found by the jury plus costs, pre-judgment interest and post-judgment interest from July 10, 2015 to the date of payment. The court's Amended Entry Journal of Judgment ordered that post-judgment interest of $3,798,867.84 had accrued on the amended judgment from July 10, 2015 through May 22, 2019 and that court costs were $7,000.

### D.  THE JUDGMENT- RELATED AMOUNTS IN DISPUTE

26. As found by the Beason trial court in its Amended Journal Entry of Judgment, post-judgment interest accrued on the amended judgment from July 10, 2015 until paid.

27. On May 6, 2019 Allianz advised Plaintiff that Allianz was denying coverage for the post-judgment interest (other than $5,543.83 of interest that it agreed to pay).

28. On May 8, 2019, Plaintiff advised Allianz that it disagreed with Allianz's denial of coverage on the post-judgment interest and was reserving all rights against Allianz in that regard. Allianz, in response, acknowledged the reservation of rights.

29. On May 28, 2019, the amended judgment and post-judgment interest was paid and satisfied. Allianz paid $5,005,543.83. Due to Allianz's denial of coverage for the post-judgment interest and court costs, Plaintiff paid $3,822,813.48 as part of that satisfaction.

30. During the appeal, Plaintiff was required to post a supercedeas bond to stay execution on the judgment while it was on appeal and incurred $391,523 in bond premium expenses in connection with the purchase of the bond. Of that amount, $53,647 represents the premium attributable to the $5M excess portion of the amended judgment.

31. Allianz never disputed that it owed coverage to I. E. Miller for the approximately $5 Million excess portion of the judgment principal exceeding the limits of the

underlying $10 Million limits of the AIG Primary Policy and, in fact, Allianz paid the $5M excess portion of the amended judgment.

32. By letter from its counsel dated July 10, 2019, Plaintiff demanded that Allianz reimburse Plaintiff for the post-judgment interest, court costs, and supercedeas bond premium amounts as amounts not covered on the AIG Primary Policy and, thus, covered on the Allianz Excess Policy pursuant to the provisions quoted above.

33. By letter from its counsel dated August 22, 2019, Allianz denied coverage.

34. All conditions precedent to Plaintiff's claims have been complied with or have been waived by Allianz.

## IV.
## CLAIMS FOR RELIEF

### COUNT I. Declaratory Judgment

35. Plaintiff hereby incorporates by reference the preceding paragraphs in this Original Complaint.

36. Plaintiff requests that the court enter a declaratory judgment under 22 U.S.C. §2201 as follows:

a. That the Allianz Excess Policy affords coverage for the $3,822,813.48 in post-judgment interest that Plaintiff paid in satisfaction of the judgment in the Underlying Lawsuit;

b. That the Allianz Excess Policy affords coverage for the portion of the $53,647 in supercedeas bond premium paid by Plaintiff corresponding to the excess portion of the amended judgment represented by the Allianz Excess Policy;

  c. That the Allianz Excess Policy affords coverage for the $7,000 in taxed court costs previously paid by Plaintiff in connection with satisfaction of the judgment in the Underlying Lawsuit.

  d. That Plaintiff is entitled to recover its reasonable and attorney fees and court costs incurred in connection with this matter.

## COUNT II. Breach of Contract

37. Plaintiff incorporates by reference the preceding paragraphs in this Complaint.

38. The Allianz Excess Policy, in "Section III. Supplementary Payments", states that Allianz will pay (1) all of the post-judgment interest, (2) all of the courts costs, and (3) that portion of the supercedeas bond premium corresponding to that part of the judgment entered in the Underlying Lawsuit that was in excess of the limits of the underlying limits of the AIG Primary Policy to the extent that such amounts are not covered on the Underlying AIG Primary Policy.

39. Plaintiff, both before and after Plaintiff paid the post-judgment interest, court costs and supercedeas bond premium, demanded that Allianz comply with its contract and extend coverage for and pay the post-judgment interest, supercedeas bond premium and court costs.

40. Allianz wrongfully denied coverage for them under the Allianz Excess Policy and thereby breached its contract.

41. Accordingly, Plaintiff is entitled to recover the post-judgment interest, court costs and the portion of the supercedeas bond premium attributable to the portion of the

judgment that was within the excess coverage of the Allianz Excess Policy limits as damages for breach of contract.

42. In addition, Plaintiff is entitled to recover its reasonable and necessary attorney fees and court costs incurred in this action.

### COUNT III.    Violations of Tex. Ins. Code Chapter 542

43. Plaintiff incorporates by reference the preceding paragraphs in this Complaint.

44. At all relevant times, Plaintiff (including I. E. Miller) was and is a Texas corporation and thus a citizen of Texas. Accordingly, Texas law applies to Plaintiff's claims under Art. 21.42, Texas Insurance Code.

45. Plaintiff's demand that Allianz reimburse Plaintiff for its payment of post-judgment interest, bond premium, and court costs after Plaintiff was required to pay same due to Allianz's denial of coverage constitutes a first party "claim" as defined by Tex. Ins. Code 542.051(2).

46. Allianz received all information it ever requested regarding Plaintiff's "claim" but has failed to pay the "claim" within the time frames required by sections 542.055 - 542.059.

47. Accordingly, under section 542.060 Allianz is liable for the "claim" and 18 percent penalty interest on the amount of the "claim" as damages together with reasonable and necessary attorney fees and court costs.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

**PRAYER**

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that the Court enter the declaratory judgment requested above, and a judgment for its contract and statutory damages and attorneys' fees and court costs as set out above, and such other and further relief at law or in equity as Plaintiff may show itself justly entitled to.

Respectfully submitted,

*/s/ David J. Schubert*

David J. Schubert—Attorney in Charge
State Bar No. 17820800
E-Mail: DSchubert@SchubertEvans.com

**Schubert & Evans, P.C.**
900 Jackson, Suite 630
Dallas, Texas 75202
Telephone: (214) 744-4400
Facsimile: (214) 744-4403

**ATTORNEYS FOR PLAINTIFF TFORCE ENERGY SERVICES, INC. (f/k/a I. E. Miller Services, Inc. and Hemphill Trucking, Inc.)**